UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 DEC 12 P 3:51

U.S. DISTRICT COURT

RYAN WASHINGTON,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

Criminal No. 3:01CR114(AHN)
Civil No. 3:04CV504(AHN)

**MOVANT'S REPLY TO GOVERNMENT'S RESPONSE TO WASHINGTON'S PETITION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Movant Ryan Washington ("Washington") submits the following reply to the Government's response to Washington's petition (sic) under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence.

### INTRODUCTION

In his initial motion, filed March 24, 2004, Washington made six claims: (1) he was denied effective assistance of counsel because his trial counsel filed a motion to dismiss the indictment based on the Petite Policy; (2) he was denied effective assistance of counsel because his trial counsel did not move to suppress the firearm and ammunition allegedly seized from his vehicle; (3) he was denied effective assistance of counsel because his trial counsel failed to adequately investigate his case; (4) his Sixth Amendment right to trial by jury was violated because the jury panel did not represent a fair cross section of his peers; (5) trial counsel's failure to discuss a potential plea agreement with him violated his right to receive a lower sentence; and (6) he was

denied effective assistance of counsel because his appellate counsel did not present sufficient issues for review on appeal.

On November 12, 2004, Washington sought leave to amend the sixth claim of his § 2255 motion. Specifically, he incorporated a Blakely[1] challenge into that claim.

After a careful review of the Government's response, the case law contained therein, and additional case law relative to Washington's claims, Washington hereby abandons claims one and four. It is out of a profound respect for this Court and for our judicial system as a whole that Washington stands down from these claims, realizing, as he must, that the claims are without merit under the present circumstances.

Washington's remaining claims - two, three, five and six - are discussed seriatim below.

## 2. Trial counsel was constitutionally ineffective in failing to file a motion to suppress[2]

The Government essentially argues that Washington's trial counsel was not ineffective for failing to file a motion to suppress the evidence allegedly seized from Washington's vehicle because (1) trial counsel was "fully versed in the New Haven Police

---

1.

Blakely v. Washington, 124 S.Ct. 2531 (2004)

2.

For the purposes of continuity and clarity, Washington assigns the claims herein with the same numbers that they were assigned in his initial § 2255 motion and the Government's response.

Department's procedure manual for the seizing and handling of evidence" (Government's response, at 13); (2) "no additonal investigation would have been necessary or appropriate to bolster any supposed grounds for suppression" (id.); (3) "the very suppression ground raised by the petitioner (sic) was appropriately raised by his trial counsel in a different form" (id. at 13-14); and (4) "[e]ven if this Court were to conclude that trial counsel was ineffective for failing to file a motion to suppress, this claim lacks merit for failure to establish prejudice." Id.

The Government's argument is without merit. First, the question of whether a Fourth Amendment violation has occurred, and if so, whether the Exclusionary Rule should be applied, is a question for the trial judge, not for the jury. In this context, it is completely irrelevant how "adept" trial counsel was in cross-examining the police officers about their handling of the evidence. Secondly, and more importantly, the evidence in this case was seized by detectives who were operating outside of their jurisdiction.[3] This undisputed fact alone should have warranted the filing of a motion to suppress.

Washington recognizes that "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the petitioner must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different

---

3.
    Detective Ciccone and Lieutenant McCarthy were both employed with the New York City Police Department at the time of the seizure.

3

absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). Here, it is readily apparent that Washington's Fourth Amendment claim is indeed meritorious. First, as stated above, New York City Police Detective Francis Ciccone and Lt. McCarthy were operating not only out of their precinct or even their city, but were operating outside of their whole state. Certainly, such action on the part of the New York City Detectives cannot be considered "reasonable" within the context of the Fourth Amendment.

Moreover, the admitted mishandling of the evidence would have provided further fodder for a motion to suppress.

Finally, the Government's reliance on the inevitable discovery doctrine likely would have proved to be a nonstarter at a suppression hearing, as the credibility of Detective Ciccone and Lt. McCarthy would have been seriously impeached with evidence that Washington previously had filed complaints with the Civilian Complaint Review Board and with the Internal Affairs Division of the New York City Police Department, alleging harassment by Lt. McCarthy and his crew. See Sworn Affidavit of Ryan Washington in Support of 28 U.S.C. § 2255 Motion, Exhibit H.

Curiously, trial counsel's affidavit, submitted at the behest of the Government, is devoid of any response to Washington's claim that counsel was ineffective for failing to file a motion to suppress. Since there was no strategic reason for counsel's failure to file a motion to suppress, the only explanation is that counsel simply did not have time to litigate Washington's Fourth Amendment

claim. This explanation is supported by the following: Trial counsel filed not one but two motions to extend the time for filing pretrial motions (October 1, 2001 and November 1, 2001). In the second motion, counsel explained to the court that he needed additional time because he was going to be tied up in trial until December 5, 2001. He, therefore, sought an extention until January 1, 2001 to file pretrial motions. However, in a letter to Washington dated November 21, 2001, counsel explained that the best time for Washington to contact him would "probably be during the afternoons from December 5th through December 7th" and that he (counsel) would be "starting another trial almost immediately beginning Tuesday, December 11th." Letter from Attorney Walkley, attached hereto as Exhibit A. With such a busy schedule, it is difficult to imagine how counsel could have found the time necessary to prepare for and brief the Fourth Amendment issue. In the final analysis, there is no reasonable, strategic basis for trial counsel not filing a motion to suppress. Moreover, as demonstrated above, Washington's Fourth Amendment claim clearly has merit. This fact, coupled with the fact that, absent the excludable evidence, the result of the proceeding would have been different, warrants habeas relief.

### 3. Trial counsel was constitutionally ineffective in failing to investigate the case

Washington had filed several complaints against Lt. McCarthy and other members of the 60th Precinct Detective Squad. See Exhibit H of Washington's affidavit. Washington informed Attorney

5

Walkley of these complaints, yet counsel conducted no investigation into their relevance to the case at bar. The relevance, of course, is pellucid. First, as discussed in Section 2 supra, these complaints would have had a direct baring on a motion to suppress the evidence. Second, evidence of the complaints, if utilized at trial, would have weighed heavily against the credibility of the New York City Detectives. Since there was no strategic reason counsel's failure to investigate and utilize the complaints, and since, but for counsel's bevue on this score, there is a reasonably probability that the outcome would have been different, Washington is entitled to relief.

### 5. Trial counsel provided constitutionally ineffective assistance relative to the Government's proposed plea agreement

To the extent that the Government construes this claim as being limited to the allegation that Attorney Walkley failed to discuss a potential plea agreement with Washington, the Government misapprehends the import of Washington's claim. It is clear from the prior pleadings that Washington's main plaint was that trial counsel utterly misled Washington as to his chances of success at trial. It was trial counsel's steadfast belief that because the evidence had been mishandled, Movant would be acquitted. Trial counsel's optimism was evinced when he confidently informed Magistrate Judge Holly B. Fitzsimmons that "the government is not going to win this case." Detention Hearing, 10/9/2001. When asked by the Magistrate if he cared to elaborate, trial counsel replied,

6

"No, that's what motions and hearings are for."  Ibid.

Trial counsel's mindset on the matter also found form in a letter he sent to Washington wherein counsel stated, "[W]e must move forward with the trial and our pursuit of your acquittal." Letter from Attornet Walkley, attached hereto as Exhibit B.

Finally, at the start of jury selection, trial counsel proffered the following to the Court.

> ...[I]t is not in [Mr. Washington's] interest to enter a plea at this time, Your Honor, and I believe that [.]

T. 3/7/02 at 3.  Trial counsel did not say that Washington felt it was not in his interest to enter a plea, but that counsel himself felt it was not in Washington's interest.

It is unclear upon what basis counsel felt that he could secure Washington's acquittal.  After all, counsel, as discussed in Section 2 supra, never even filed a motion to suppress.

In any case, it it undisputed that counsel never advised Washington on whether the proposed plea agreement appeared to be desirable.  In his affidavit for the Government, Attorney Walkley recounts how he had "provided [Washington] with an analysis of the applicable sentencing guidelines, his past criminal history, and the benefits and range of sentences he might receive if he were to plead guilty," and how he (counsel) had "apprised [Washington] fully of the risks of going to trial instead of ending his case with a guilty plea." Id. at ¶¶7 and 8.  But counsel never offered his opinion on what course (plea or trial) Washington should take.  In this respect, it is axiomatic that "prior to trial an accused is entitled to rely upon his counsel to make an

independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." Von Moltke v. Gillies, 332 U.S. 708, 721 (1948). Further, in Boria v. Keane, 99 F.3d 492, 496 (2nd Cir. 1996), the Second Circuit quoted with approval the American Bar Associations standard on the issue, which is stated in its Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992):

> A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to charge appears to be desirable. (Second Circuit's emphasis deleted)

In the case sub judice, had counsel advised Washington that absent the exclusion of the firearm and ammunition allegedly seized from the vehicle, obtaining an acquittal would be almost impossible, Washington would have pleaded guilty to the charge. Further, Attorney Walkley's statement in his affidavit that "Mr. Washington trusted the trial process, had had success at trial in the past, and believed that he would achieve the same success at trial in the above-captioned case," is particularly disingenuous because counsel knew that Washington had pled guilty to the offense which had served as the predicate offense for the instant felon in possession of a firearm charge. Moreover, counsel's reasoning flounders in light of his prior statements on the matter.

In light of the above, Washington clearly is entitled to relief.

6. **Appellate counsel was constitutionally ineffective for failing to raise sentencing enhancement issues on appeal**

Aside from any Booker concerns, Washington asserts that the trial court erred in increasing Washington's base offense level by four levels for using or possessing any "firearm or ammunition in connection with another felony offense" (U.S.S.G. § 2K2.1(b)(5)), and that appellate counsel was ineffective for not raising the issue on appeal.

In the case at bar, Washington's sentence was increased for, inter alia, using or possessing a firearm in connection with another felony offense. Sentencing Hearing transcript at 61 (hereinafter "Str." followed by page number). The Court found the four-level enhancement appropriate based on evidence of two separate incidents. The first incident involved a double shooting that had occurred in Coney Island, New York on September 28, 1998 (Washington was acquitted of charges resulting from this incident). The second incident involved Washington's alleged possession of another firearm (not the firearm that resulted in the instant conviction) while allegedly possessing narcotics with the intent to distribute same. These incidents while clearly contemplating "felony offenses," should not have been used to increase Washington's base offense level because they do not constitute "relevant conduct" within the meaning of U.S.S.G. §1B1.3, which includes in relevant part "all acts and omissions committed, aided, abetted, counselled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." §1B1.3(a)(1)(A) (emphasis added). Neither of the

9

incidents described above occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. Therefore, neither incident qualifies as "relevant conduct." The Court, of course, held otherwise, noting, with respect to the first incident, that the ballistic evidence showed the firearm used in the double shooting in New York was the same firearm purportedly found in Washington's car two years later. Str. at 19. The Court found this fact to be dispositive in its evaluation of the specific offense characteristics. <u>Ibid</u>. With all due respect, it is legally irrelevant whether the two guns are the same, or even whether Washington possessed the weapon two years prior. The question is whether the double shooting occurred during the commission of the offense of conviction. The offense of conviction, of course, being the charge set forth in the indictment, <u>i.e.</u>, that on May 2, 2000, in New Haven, Connecticut, Washington possessed a firearm and ammunition after having been previously convicted of a felony. The indictment did not charge that Washington possessed the weapon two years earlier in New York, or on September 28, 2000 in Newark, New Jersey (the location of the second incident). If the indictment <u>had</u> included those dates and locations, then the shooting and the alleged narcotics offense would qualify as relevant conduct under §1B1.3. However, in the case at bar the court's over-inclusive interpretation of §1B1.3 violated Washington's Fifth Amendment right to due process, and appellate counsel's failure to argue the issue on appeal constitutes ineffective assistance of counsel.

In addition, based on the Court's determination that the 1998 shooting was relevant conduct, the Court also increased Washington's criminal history category from level II to level III based on a prior conviction from 1989 (without the expansive relevant conduct determination, the 1989 conviction could not have been counted under §4A1.1(b) and §4A1.2(e), as the 1989 conviction predated the offense of conviction by more than ten years). See Str. at 73. Therefore, should this Court find that the New York shooting was improperly counted as relevant conduct, the 1989 conviction would also have to fall.

In sum, because neither the New York shooting nor the Newark drug allegation constitute relevant conduct and therefore should not have been used to increase Washington's base offense level or his criminal history category, Washington must be resentenced at a base offense level of 25, with a criminal history category of II, producing a Guidelines range of 63-78 months. Moreover, appellate counsel's failure to raise this clearly meritorious issue on direct appeal constitutes ineffective assistance. See, e.g., Banks v. Reynolds, 54 F.3d 1508, 1515-16 (10th Cir. 1995).

In light of the above, Washington is entitled to relief.

## CONCLUSION

For the foregoing reasons and authorities cited, Washington prays that his § 2255 motion will be granted.

Respectfully submitted,

_____
Ryan Washington
Reg. No. 67016-053
U.S. Penitentiary Allenwood
P.O. Box 3000
White Deer, PA 17887

Movant, pro se

Dated: 12/6/05

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was sent, via first-class prepaid mail, this 6th day of December, 2005, to the following counsel for the Government:

Mr. Robert M. Spector
Assistant U.S. Attorney
450 Main Street
Hartford, CT 06103

_____
Ryan Washington

**JOHN T. WALKLEY**
ATTORNEY AT LAW
450 MONROE TURNPIKE
SUITE 101
MONROE, CONNECTICUT 06468

(203) 261-1911
FAX (203) 268-1433

November 21, 2001

Mr. Ryan Washington
Donald W. Wyatt Detention Center
950 High Street
Central Falls, Rhode Island 02863

      Re:    **United States v. Ryan Washington**
              **Docket No. 3:01CR-114 (AHN)**

Dear Ryan:

      Enclosed please find a copy of my Motion for Discovery with the Court's margin ruling noted. The Court has granted the motion and ordered the government to turn over all that has been requested to the extent that the materials exist. This copy of the motion is provided for your review and record.

      I still have not heard anything from the Court and believe that the Magistrate is away until the beginning of next week. Although I am starting evidence in a trial on Monday, I will try to call the Court for an update on the bond/detention situation. If the Probation Office has prepared a report that they can share with me, I will attempt to get a copy of the report for your information. If all of these offices feel they are in a position to make a decision on your bond, I will request a hearing date to re-visit your detention.

      Getting in touch with me over the next couple of weeks might be difficult due to my trial schedule. Your best opportunity to find me in the office in the near future will probably be during the afternoons from December 5th through December 7th. Thereafter, I will be starting another trial almost immediately beginning Tuesday, December 11th. If this schedule should change, I will let you know.

      I'll be in touch with you again soon.

                                    Sincerely,

                                    John T. Walkley

**Exhibit A**

# JOHN T. WALKLEY
ATTORNEY AT LAW
450 MONROE TURNPIKE
SUITE 101
MONROE, CONNECTICUT 06468

(203)261-1911
FAX (203) 268-1433

March 8, 2002

Mr. Ryan Washington
Donald W. Wyatt Detention Center
950 High Street
Central Falls, Rhode Island 02863

        Re:    **United States v. Ryan Washington**
                  **Docket No. 3:01CR-114 (AHN)**

Dear Ryan:

      Enclosed is Judge Nevas's order denying my motion to dismiss your case pursuant [redacted] Petite Policy. The decision is self-explanatory. As you and I discussed the other [redacted] Wyatt, the Judge's decision is not surprising in light of the fact that Petite does not confer upon us any substantive rights that we can enforce. In any event, we must move forward with the trial and our pursuit of your acquittal.

      I'll see you on Monday in Bridgeport.

                                            Sincerely,

                                            John T. Walkley

*Exhibit B*