```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
                                  :
RYAN WASHINGTON                   :
                                  :
v.                                :   CRIM. NO. 3:01CR114 (AHN)
                                  :    CIV. NO. 3:04CV504 (AHN)
UNITED STATES OF AMERICA          :
                                  :
                                  :
                                  :
```

<u>     RECOMMENDED RULING ON PETITION FOR WRIT OF HABEAS CORPUS     </u>
<u>                PURSUANT TO 28 U.S.C. §2255                </u>

Petitioner Ryan Washington, ("Washington"), <u>pro se</u>, seeks a writ of habeas corpus pursuant to 28 U.S.C. §2255, vacating, setting aside and/or correcting his July 31, 2002, conviction. Washington was found guilty by a jury of being a previously convicted felon in possession of a firearm in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2). He was sentenced to 120 months incarceration and 3 years supervised release. Washington appealed his conviction, which was affirmed by the Court of Appeals in a summary order dated August 26, 2003.

In his initial §2255 motion, filed March 24, 2004 [Doc. #65], petitioner made six claims: (1) he was denied effective assistance of counsel because his trial counsel filed a motion to dismiss the indictment based on the Petite Policy; (2) he was denied effective assistance of counsel because his trial counsel did not move to suppress the firearm and ammunition seized from his vehicle; (3) he was denied effective assistance of counsel because his trial counsel failed to adequately investigate his case; (4) his Sixth Amendment right to trial by jury was violated because the jury panel did not represent a fair cross section of

his peers; (5) trial counsel's failure to discuss a potential plea agreement with him violated his right to receive a lower sentence; and (6) he was denied effective assistance of counsel because his appellate counsel did not present sufficient issues for review on appeal.

On November 12, 2004, the petitioner filed a motion to amend the sixth claim of his §2255 motion [Doc. #69], arguing that his appellate counsel had been ineffective by failing to challenge sentencing enhancements for: (1) possessing a firearm with a obliterated serial number; (2) possessing a firearm found in his car in connection with another felony offense; and (3) assaulting law enforcement officers during his flight from police, all of which violated his Sixth Amendment rights, as discussed in Blakely v. Washington, 542 U.S. 296 (2004).

The government filed a response on November 17, 2005 [Doc. #75].

Petitioner filed a reply brief on December 12, 2005, withdrawing claims one and four [Doc. #79 at 2], and arguing for the first time that his appellate counsel was ineffective for failing to challenge the "relevant conduct" considered by the court in connection with four level enhancement "for using or possessing a firearm or ammunition in connection with another felony offense," contrary to his Sixth Amendment rights under Blakely.

For the reasons set forth below, this petition is **DENIED. [Doc. #65].**

BACKGROUND

Judge Nevas described the following background facts in his opinion denying the Motion for Judgment of Acquittal and Motion for New Trial. [Doc. #48 at 1-2].

On May 2, 2000, detectives from New York City Police Department accompanied detectives from the New Haven, Connecticut, Police Department to 21 Bassett Street in New Haven to search for Ryan Washington because he was a suspect in a shooting investigation in Brooklyn, New York. At that address, the detectives spotted a green Honda Accord, owned by the defendant's mother and known to the New York detectives as the car driven exclusively by the defendant. The detectives left after failing to gain entry to the residence.

Sometime after leaving 21 Bassett Street, the detectives saw the green Accord approach a nearby intersection and attempted to block petitioner's car from proceeding. Some of the detectives exited their vehicles and approached the petitioner in his car. Before they could do so, petitioner accelerated and left the scene, damaging the police cars in the process and almost striking two officers.

The detectives gave chase and ultimately found the car at 88 Marlboro Street in Hamden, Connecticut. Detective Ciccone saw the petitioner running from the car and attempted to stop him. Unsuccessful in his efforts, Detective Ciccone returned to the Honda Accord, looked inside and saw the handle of a Glock .45 semiautomatic pistol. Detective Ciccone removed the weapon and

eventually gave it to New Haven Detective Lisa Dadio for processing.

Petitioner was eventually arrested in New Jersey in September 2000, in possession of narcotics, a firearm and ammunition. In July 2001, the petitioner was brought to trial in the Supreme Court of Kings County, New York on charges related to a 1998 shooting. He was acquitted on all charges.

On May 31, 2001, a federal grand jury in New Haven, Connecticut returned a one-count indictment, charging petitioner with possessing a firearm after having been convicted of a felony, in violation of §922(g)(1). Specifically, the indictment alleged that the petitioner knowingly possessed a Glock .45 caliber firearm found in his vehicle in New Haven on May 2, 2000.

On March 12, 2002, after a two-day trial, a jury found the petitioner guilty.

The Presentence Report

The Presentence Report ("PSR") concluded that the petitioner's total offense level was 29, based on the following calculations. First, the base offense level was 20 under U.S.S.G. §2K2.1(a)(4)(A) because the petitioner was previously convicted of second degree robbery. Second, the PSR added two levels under U.S.S.G. §2K2.1(b)(4) because the firearm had an obliterated serial number. Third, the PSR recommended a four level increase under U.S.S.G. §2k2.1(b)(5) because the petitioner possessed the firearm found in his car in connection with another felony offense, i.e., the September 28, 1998 double shooting, or

in the alternative, because, at the time of his arrest, the petitioner possessed a loaded Ruger, P-85, 9 mm handgun in connection with a felony offense, i.e. possession with intent to distribute marijuana and cocaine.  Finally, the PSR added three levels under the official victim enhancement, U.S.S.G. § 3A1.2(b), because the petitioner rammed his vehicle into two different police cars, almost striking the officers as they attempted to stop him.  The applicable guideline range was 108-135 months of incarceration, which, given the ten-year statutory maximum sentence, yielded an effective range of 108-120 months.

At the July 31, 2002, sentencing hearing, Judge Nevas adopted the calculations set forth in the PSR. The Government also argued in support of an additional two-level enhancement for reckless endangerment under U.S.S.G. §3C1.2, but the Court determined that it did not have to resolve the issue because "[e]ven without this factor of - or this enhancement factored in, he - his guideline range would exceed the 120 months . . . ." The Court sentenced the petitioner to 120 months of incarceration.

Appeal

On August 1, 2002, the petitioner filed his notice of appeal.  He raised two claims: first, that the Court committed plain error in defining the "possession" element of the 18 U.S.C. §922(g)(1) offense for the jury; and second, that the Court improperly exercised its discretion when it applied the three-level official victim enhancement under U.S.S.G. §3A1.2(b).  On

5

August 26, 2003, the Second Circuit rejected both claims by summary order and affirmed the conviction.

On March 24, 2004, the petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. §2255 raising claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel and violations of this constitutional rights. On November 12, 2004, the petitioner filed a motion to amend his §2255 motion, arguing for the first time that his appellate counsel was ineffective for failing to challenge specific sentencing enhancements as contrary to his Sixth Amendment rights under Blakely, 542 U.S. 296.

## STANDARD OF REVIEW

The grounds for collateral review of criminal convictions under §2255 are narrow and limited. As the Supreme Court has explained, it has long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. See United States v. Addonizio, 442 U.S. 178, 184 (1979) (noting that the reasons for narrowly limiting collateral attacks are "well known and basic to our adversary system of justice."). To obtain collateral relief, a habeas petitioner "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). That hurdle is even higher where the claims asserted by a habeas petitioner have been procedurally defaulted. See e.g., id. at 167: Wainwright v. Sykes, 433 U.S. 72, 87 (1977) (adopting a cause and prejudice requirement for all

6

petitioners seeking federal habeas relief on procedurally-defaulted constitutional claims).

## DISCUSSION

A. Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668, 687 (1984), the Supreme Court established the following standard for ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," id. at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,"[1] id. at 694 (internal quotation marks omitted); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998); see also Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) (per curiam) ("[C]ounsel has wide latitude in deciding how best to represent a client . . . .").

---

[1] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

"The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Linstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" United States v. Aguirre, 912 F.2d 555, 561 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696-97) (internal citations omitted). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough, 540 U.S. at 8 (multiple citations omitted).

Washington's ineffective assistance of counsel claim asserts that trial counsel was ineffective for failing to 1) file a motion to suppress; 2) adequately investigate the case; and 3) advise petitioner of a potential plea agreement and the potential guideline range that could result if the petitioner pleaded guilty.

Finally, petitioner raises an ineffective assistance of counsel claim against his appellate counsel, arguing that various sentencing enhancements violated the principles set forth in Blakely, as they were based on factual findings not proven to a jury beyond a reasonable doubt. Although the Supreme Court formulated the Strickland test in the context of examining a

claim of ineffective assistance of trial counsel, the same test applies to claims regarding the performance of appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992). Appellate counsel need not present every nonfrivolous argument that could be made. See Mayo, 13 F.3d at 533 (citing Jones v. Barnes, 463 U.S. 745, 754 (1983). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices. See Mayo, 13 F.3d at 533 (citing Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)). A petitioner, however, may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. Mayo, 13 F.3d at 533; see Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) ("[R]elief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy.").

1.   Failure to File Motion to Suppress

Petitioner first argues that his trial counsel was ineffective for failing to file a motion to suppress. "In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed." United States v. Matos, 905 F.2d 30, 32 (2d Cir.

1990) (citation omitted).

Specifically, petitioner alleges that "[t]he facts surrounding the firearm ammunition clips substantiate [that] police procedure was highly improper as well as irregular; however, counsel utterly failed to make an issue of the admissibility and/or legality of the evidence by seeking a suppression hearing on these matters. [Doc. #65-1 at 6]. He asserts that "the need for a suppression hearing was substantiated by the fact the 'chain of custody' over the items used in the New York State case and the present federal prosecution was never verified after the seals were broken." [Doc. #65-2, Pet. Aff. at ¶26]. Here, Washington has not demonstrated that omission of a motion to suppress by counsel was objectively unreasonable or that, if the motion were made, the outcome of the trial would probably have been different.

Defense counsel is not automatically required to file a suppression motion in every case involving evidence. U.S. v. Aulet, 618 F.2d 182, 187 (2d Cir. 1980). "[R]ather, counsel must use 'professional discretion in deciding whether there are sufficient grounds' for such a motion." Id. at 187-188 (citing LiPuma v. Comm'r. Dep't of Corrections, 560 F.2d 84, 93 (2d Cir.), cert. denied, 434 U.S. 861 (1977)). The Second Circuit specifically stated, "[w]e are understandably reluctant to require defense counsel routinely to file boilerplate motions merely to vindicate their professional competence without regard for the grounds supporting such motions." United States v.

10

DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987).

Apart from the bald assertion that the failure to file a suppression motion in this case was "far from reasonable and caused prejudice to [petitioner's] defense," [Doc. 65-2 at ¶25], petitioner's selective citation to what he argues is "clearly contradicted testimony" provides no basis for supporting this motion.[2]  Id. ¶21.  First, the "trial testimony" Washington contends is "contradicted," provided by New Haven Police Detective Pelletier to the Federal Grand Jury on May 31, 2001 and by New York Police Detective Ciccone at a "New York City Trial" on July 30, 2001, Id. at ¶20 and ¶21, is actually consistent with Detective Ciccone's finding the firearm under the driver's seat. What is unclear is whether the firearm was in a plastic bag; the testimony differs in that Detective Ciccone testified that he could not recall.  Id. at ¶21.  Moreover, petitioner's reliance on the "Case Incident Report" is not helpful as the officer's arrival on the scene was after the weapon and magazine were discovered and removed from the vehicle by the officers on the scene.  Id. at ¶22. She stated that the officers had "retrieved the weapon and made it safe" . . . "I had not taken photographs of the weapon or magazine due to the fact that they had not been in their original position."  Id. at ¶22.

Second, as the government points out, trial counsel vigorously cross-examined the police officers on the issue of

---

[2]The Court notes that the testimony on which petitioner relies is excerpted in his affidavit.  Original transcripts and documents were not provided.

perceived mishandling of evidence and objected to the admissibility of the magazines and ammunition located in the vehicle.

> The testimony was all over the place with regard to which magazine was in the gun, which was not, [and] where it was found. I object to either of the magazines coming in, Your Honor, and for that matter, any of the ammunition
> . . .
>
> I don't believe it is a weight issue. With regard to a second magazine, and we have no idea which of those is the second magazine, there's been no evidence offered as to how or who recovered that magazine and from where. None of the witnesses have been able to present that kind of testimony. At this point, the only reason that this witness, I suspect, can identify it is because it's now been placed back in that original box, but there was another witness who has already testified here today who said that he wouldn't be able to identify any of them because they were just generic cartridges.

[Doc. #57 at 215-16]. Judge Nevas overruled the objection and the exhibit was admitted into evidence. Id.

This issue regarding "conflicting testimony" was also raised by Washington's counsel and addressed by Judge Nevas in ruling on a motion for new trial. [Doc. #48]. In denying the motion the Court stated,

> While some inconsistencies and alleged shortcomings may exist in the government's evidence, they are not material. The officers agreed on the facts necessary to prove possession of the gun by Ryan Washington. That the officers disagreed, nearly two years after the fact, on whether the car[] doors were open or from what side of the car the detective entered will not suffice to set aside a reasoned jury verdict.

12

> Upon review of the evidence, the court concludes that a rational juror could find beyond a reasonable doubt that the government proved the necessary elements of the crime charged, that is: (1) that the Defendant was convicted in any court, of a crime punishable by imprisonment for a term exceeding one year; (2) that the Defendant knowingly possessed a firearm; and (3) that the possession charged was in or affecting interstate commerce.
>
> Moreover, when there are inconsistencies in witness testimony, the jury, not the court, must resolve them. See United States v. Antuori, 212 F.3d 105, 117 (2d Cir. 2000).

[Doc. #48 at 5-6].

In applying Strickland, this Court cannot find that petitioner (a) established that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" and (b) has "affirmatively prov[en] prejudice" by demonstrating "that here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687-89. Here, Washington failed to make either element of the two-part showing.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the petitioner must also prove that his Fourth Amendment claim is meritorious and that there is reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Laaman v. United States, 973 F.2d 107, 113 (2d Cir. 1992) (internal quotation marks and brackets omitted) (quoting

Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). The government correctly points out that there was no viable Fourth Amendment claim to raise in a suppression motion. "First, the police had reasonable suspicion to stop the petitioner based both upon their identification of him as a suspect in a pending assault investigation and his actions in nearly striking the officers with his vehicle as he sped away from the police on Shelton Street prior to being detained. Second, the firearm itself was properly seized from the vehicle as it was protruding from underneath the front passenger seat in plain view when the detective peered into the vehicle. Third, the petitioner lacked any reasonable expectation of privacy in the vehicle and its contents because he abandoned it when he escaped from the police." [Doc. #75 at 15]. Petitioner offered no opposing argument on these Fourth Amendment issues, thus falling short of proving that his claim was meritorious or that there is reasonable probability that the verdict would have been different. Laaman, 973 F.2d at 113.

2.  Failure to Adequately Investigate

Petitioner's claim that trial counsel's preparation of a defense was inadequate because he failed "to conduct any meaningful pre-trial investigation" is equally unavailing. Specifically, he claims that his trial counsel was ineffective for "failing to obtain the radio transmission transcripts to ascertain whether the time frame of the events were accurately

14

related by the testimonies of the Officers." [Doc. #65-2, Pet. Aff. at ¶27]. He also claims that his trial counsel was ineffective for failing to interview Juanita Smith, the lessee of the apartment where the petitioner had been staying in New Haven, before the police found him. Id. ¶28.

This claim has no merit. First, trial counsel acknowledged that he did not obtain transcripts of the police radio transmission on May 2, 2000, but "did not believe that such information would have been helpful in anyway to the defense. [Doc. #75, Walkley Aff. ¶9]. "The events involved at the trial were short in their duration and the kind of information that Mr. Washington suggests I should have obtained I don't believe would have been meaningful or helpful to the defense in any critical way." Id. As to Ms. Smith, trial counsel indicated that he indeed interviewed her prior to trial and determined that she would not have offered helpful testimony, and could have actually hurt the defense. Id. ¶10. On this basis, the Court is unable to conclude that Washington's trial counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms." Strickland, 466 U.S. at 687-89; DiTomasso, 817 F.2d at 215 ("That present counsel would have conducted more vigorous pre-trial discovery does not establish the ineffectiveness of trial counsel . . . .").

Moreover, petitioner is unable to "affirmatively prove prejudice." Id. As to the radio transmission transcripts, petitioner has not shown whether such transcripts existed at the

15

time of his May 31, 2001, indictment, which was returned over one year after seizure of the firearm in New Haven on May 2, 2000. Indeed, petitioner failed to articulate how the transcripts could have benefitted him at trial. Petitioner was convicted of knowing possession of a firearm by a convicted felon based on his abandonment of a vehicle in which a firearm was partially concealed under the front passenger seat. With respect to Juanita Smith, petitioner also offered no information on how her testimony would have helped his defense. Wiggins v. Smith, 539 U.S. 510, 527 (2003) ("In assessing the reasonableness of an attorney's investigation, . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further."). Because there is a presumption that counsel acted reasonably, ineffective assistance claims necessarily fail if they are only based on "undetailed and unsubstantiated assertions." Polanco v. United States, No. 99 Civ. 5739 (CSH), 2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000)(citations omitted). Accordingly, petitioner's claim of ineffective assistance of trial counsel fails.

3.   Failure to Discuss Plea Agreement

Petitioner's next contention that his trial counsel was constitutionally deficient for failure to "advise petitioner of the plea offer" is also unavailing. In this context, the strong presumption that counsel "rendered adequate assistance and made

all significant decisions in the exercise of reasonable professional judgment," Strickland, 466 U.S. at 690, creates a presumption that "counsel . . . communicate[d] to the defendant the terms of the plea offer . . . and . . . [usually] informed the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he w[ould] most likely be exposed." Purdy v. United States, 208 F.3d. 41, 45 (2d Cir. 2000) (citations omitted). To establish prejudice, petitioner must show that, but for counsel's deficient advice, he would have pleaded guilty. Id. at 49.

Washington must present "objective evidence" in support of his claim[] in order to prevail. See Slevin v. United States, 71 F. Supp. 2d 348, 362 n. 15 (D. Conn. 1999), aff'd, 2000 WL 1528655 (2d Cir. 2000). Even if the petitioner and his former counsel submit contradictory affidavits, the court need not hold a hearing to resolve the credibility issue. See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (with respect to claim of counsel's purported failure to advise defendant of right to testify, district court properly resolved credibility issue in favor of attorney where petitioner's proffer "involved a generic claim-one that can be, and is often made in any case in which the defendant fails to testify-based solely on his own highly self-serving and improbable assertions.").

Here, petitioner's factual allegations related to this claim, [Doc. 65-2, Pet. Aff. ¶¶34-42], are rebutted both by the representations in trial counsel's affidavit [Doc. #75, Walkley

17

Aff. ¶¶7-8], and the March 7, 2002 jury selection transcript. In the affidavit, trial counsel states that he discussed a potential guilty plea with the petitioner and the potential guideline range that could result if the petitioner pleaded guilty. Id. ¶7. At the start of jury selection, the following colloquy occurred:

Mr. Kurimai:   Yesterday, Your Honor, Mr. Walkley brought to the Court's attention that the had not discussed with his client the potential guideline calculations and matters of the difference between a conviction following trial and a plea and things of that nature. It's my recollection, although I don't know the case off the top of my head, that failure to discuss that could be grounds for a 2255 motion on down the road, and I would not like to see us in that position. So if the Court would care to inquire of Mr. Walkley and/or his client to the extent that the Court thinks it appropriate as to whether such discussions were held and the client is really knowledgeable about the respective guideline disparities, I think it might be in order.

The Court:   Mr. Walkley.

Mr. Walkley:   Thank you. Your Honor, Mr. Washington and I have talked about a plea. We have talked about it in general terms, but we've talked about it from a sentencing guidelines point of view as well. The kind of calculations that we have, Mr. Washington and I have talked about are similar to the kinds of numbers and calculations that the United States attorney was

>                    mentioning to me yesterday, and
>                    even after the discussions that Mr.
>                    Washington and I have had, it is
>                    not in his interest to enter a plea
>                    at this time, Your Honor, and I
>                    believe that-

[Doc. #56 at 2-3]. As the transcript demonstrates, at the time of trial, petitioner had ample opportunity to raise this claim before the Court. The Court finds that petitioner has not met his burden of proof as set forth in Strickland.

Accordingly, petitioner's claim of ineffective assistance of trial counsel on this claim fails.


4.  **Failure to Raise Sixth Amendment Challenge to Various Sentencing Enhancements**

Finally, petitioner raises an ineffective assistance of counsel claim against his appellate counsel, arguing that various sentencing enhancements violated the principles set forth in Blakely v. Washington, 542 U.S. 296 (2004), as they were based on factual findings not proven to a jury beyond a reasonable doubt. The Court construes this claim as one under Booker v. United States, 543 U.S. 220 (2005), which, even though not dictated by Apprendi v. New Jersey, 530 U.S. 466 (2000) or Blakely, see Guzman v. United States, 404 F.3d 139, 142 (2d. Cir. 2005), is, for all intents and purposes, the federal analog of Blakely. Even if his claim had merit, Washington would not be entitled to relief under Booker, because his conviction became final before January 12, 2005, the date Booker was decided. Because, under Second Circuit law, Booker is not retroactive on habeas review,

see Guzman, 404 F.3d at 144, Washington's habeas petition fails on this basis as well.

CONCLUSION

For the reasons stated, Washington's petition for a writ of habeas corpus **[Doc. #65]** is **DENIED**.

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED at Bridgeport this 15th day of March 2006.

                                                                /s/
                                           HOLLY B. FITZSIMMONS
                                           UNITED STATES MAGISTRATE JUDGE