IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

RYAN WASHINGTON,

        Movant,

      v.

UNITED STATES OF AMERICA,

        Respondent.

Civil Case No. 3:04-Cv-504
Crim. Case No. 3:01-Cr-114

United States District Judge
Honorable Alan H. Nevas

---

RECORD OF EXHIBITS IN
SUPPORT OF MOVANT'S MOTION
TO REOPEN TIME TO APPEAL

Mr. Ryan Washington
Reg. No. 67016-053
U.S.P. Allenwood
Post Office Box 3000
White Deer, Pennsylvania
17887-3000

## TABLE OF CONTENTS

Exhibits                                                                     Page

1. Certificate of Service by Mail              . . . . . . . . . . . . .   1

2. Cover Page of Motion for Reconsideration          . . . . . . . .   2

3. Letter requesting Determination of Status             . . . . . .   3

4. Court's July 13, 2006 Order Denying Reconsideration     . .   4

5. Postmark of Envelope from Clerk's Office          . . . . . . . .   5

6. Code of Federal Regulations (§540.18—.19          . . . . . .   6

certainly bolster movant's argument that he should receive retro-
active application of Blakely/Booker; on the flip side of the coin,
the difficult determination still would necessarily have to be made
regardless of the outcome of Receunco. Therefore, this Court should
render its decision reconsidering its adoption of the Magistrate's
recommended ruling after the Supreme Court has expressed its opi-
nion in Recuenco.

Wherefore, this Pro se Movant prays this Honorable Court re-
consider its "approv[al], Adopt[ion] and ratifi[cation]" of the
Magistrate's recommended ruling denying his motion under 28 U.S.C.
§2255. And, grant and and all other relief this Court deems just
and proper in the interest of fairness and justice.

                                    Resepctfully submitted,

                                    Mr. Ryan Washington
                                    Pro se Movant
                                    Reg. No. 67016-053
                                    U.S.P. Allenwood
                                    Post Office Box 3000
                                    White Deer, PA  17887

## CERTIFICATE OF SERVICE BY MAIL

I HEREBY CERTIFY that a true and complete copy of the fore-
going has been given to prison officials for mailing, first class
postage prepaid, and sent to: The Office of the U.S.. Attorney for
the District of Connecticut located at 450 Main Street, Hartford,
Connecticut  06103. On this 1st day of May, 2006, pursuant to 28
U.S.C. §1746.

                                    Mr. Ryan Washington
                                    Pro se Movant

Exhibit - 1

IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**

RYAN WASHINGTON,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

2006 MAY -8 P 4:16

U.S. DISTRICT COURT
BRIDGEPORT CONN

Civil Case No. 3:04cv830(AHN)
Crim. Case No. 3:01-cr-114

(Nevas, District Judge)

(Fitzsimmons, Magistrate Judge)

MOTION FOR RECONSIDERATION UNDER
FEDERAL RULES OF CIVIL PROCEDURE, 52(b) and 59(e)

Comes Now, Ryan Washington, the undersigned Pro se Movant,
and files this motion for reconsideration, under Federal Rules
of Civil Procedure ("F.R.Civ.P."), Rule 52(b) to make additional
findings of law or fact, and Rule 59(e) to alter or amend its
April 20, 2006 judgment in which it "approved, adopted and rati-
fied" the Magistrate's recommended ruling, to deny movant's motion
to vacate under 28 U.S.C. §2255.[1] In support of this motion, movant
states as follows based in law and fact.

As a threshold matter, movant respectfully request that this
Court recognize his pro se status, and therefore liberally construe
the arguments set forth herein. See Haines v. Kerner, 404 U.S. 519
(1972). And, acknowledge that a motion for reconsideration is appro-
priate in a habeas proceeding under 28 U.S.C §2255 under its govern-
ing rules. See §2255 Rule 12 (West 2005); see also, Moore's Federal

---

[1]  Please note that movant has not received a signed Order from
the district court, and only learned of its April 20, 2006 Order
through a "Notice of Electronic Filing" letter forwarded to movant
by mail.

- 1 -

Exhibit - 2

0 1CR 114AHN

Mr. Ryan Washington
Reg. No. 67016-053
U.S.P. Allenwood
Post Office Box 3000
White Deer, Pennsylvania
17887-3000

October 11, 2006

RECEIVED

OCT 1 6 2006

U.S. DISTRICT COURT
NEW HAVEN, CONN.

Office of the Clerk
United States District Court
District of Connecticut
141 Church Street
New Haven, Connecticut   06510

Re: <u>Ryan Washington v. United States</u>, 3:04-Cv-504 (AN) (AHW)

Dear Sir/Madam:

I am writing your office respectfully requesting that you provide me with a copy of an updated docket sheet in the above civil matter.

This copy of the docket sheet is necessary in order for me to ascertain the status of a Motion for Reconsideration I filed with this Court on or about May 1, 2006, by giving the same to prison officials for mailing. Consequently, I have not received any notice as to whether this motion has been ruled upon by the court, thus I make this request to be assured that the motion is still pending before the Court and has not been ruled on.

Thank you for your time and attention to this matter, and I look forward to hearing from your office soon.

Very truly yours,

_see attached →_

Mr. Ryan Washington
Pro se Movant

RW/gam

Exhibit-3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
RYAN WASHINGTON,                    :
          Petitioner,               :
                                    :
v.                                  :    Crim. No. 3:01cr114 (AHN)
                                    :    Civ. No. 3:04cv504 (AHN)
UNITED STATES OF AMERICA,           :
          Respondent.               :
```

RULING ON MOTION FOR RECONSIDERATION

On April 20, 2006, the court approved and adopted Magistrate Judge Fitzsimmons's recommended ruling denying Ryan Washington's ("Washington") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Washington now moves for the court to reconsider its order adopting the recommended ruling. Washington's motion for reconsideration is GRANTED [doc # 84], and after further review, the court adheres to its original order.

So ordered this 13th day of July, 2006, at Bridgeport, Connecticut.

_____/s/_____
Alan H. Nevas,
United States District Judge

Exhibit-4

OFFICE OF THE CLERK
**UNITED STATES DISTRICT COURT**
**U.S. COURTHOUSE**
**915 LAFAYETTE BOULEVARD**
**BRIDGEPORT, CONNECTICUT 06604**
**OFFICIAL BUSINESS**

Mr. Ryan Washington
Reg. No. 67016-053
USP Allenwood
PO Box 3000
White Deer, PA 17887-3000



## § 540.15

not be sealed by the inmate and may be read and inspected by staff.

(c)(1) Outgoing mail from a sentenced inmate in a minimum or low security level institution may be sealed by the inmate and, except as provided for in paragraphs (c)(1)(i) through (iv) of this section, is sent out unopened and uninspected. Staff may open and inspect an inmate's outgoing general correspondence:

(i) If there is reason to believe it would interfere with the orderly running of the institution, that it would be threatening to the recipient, or that it would facilitate criminal activity.

(ii) If the inmate is on a restricted correspondence list.

(iii) If the correspondence is between inmates (see § 540.17); or

(iv) If the envelope has an incomplete return address.

(2) Except for "special mail," outgoing mail from a sentenced inmate in a medium or high security level institution, or an administrative institution may not be sealed by the inmate and may be read and inspected by staff.

(d) ........ The Warden may reject correspondence sent to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity. Correspondence which may be rejected by a Warden includes, but is not limited to, correspondence which contains any of the following:

(1) Matter which is nonmailable under law or postal regulations;

(2) Matter which describes or encourages activities which may lead to the use of physical violence or group disruption;

(3) Information of escape plots, of plans to commit illegal activities, or to violate Bureau rules or institution guidelines;

(4) Direction of an inmate's business. (See § 541.13, Prohibited Act No. 408). An inmate, unless he is a pre-trial detainee, may not direct a business while confined.

This does not, however, prohibit correspondence necessary to enable an inmate to protect property and funds that were legitimately the inmate's at the time of commitment. Thus, for example, an inmate may correspond

about refinancing an existing mortgage or sign insurance papers, but may not operate a mortgage or insurance business while in the institution.

(5) Threats, extortion, obscenity, or gratuitous profanity;

(6) A code or code equivalent;

(7) Sexually explicit material (for example, personal photographs) which, by its nature or content poses a threat to the security and good order, or secu rity of an individual's personal safety or security.

[50 FR 40109, Oct. 1, 1985, as amended at 56 FR 4159, Feb. 1, 1991; 62 FR 65306, Dec. 10, 1997]

### § 540.15   Restricted general correspondence.

(a) The Warden may place an inmate on restricted general correspondence based on misconduct or as a matter of classification. Determining factors in clude the following:

(1) Involvement in any of the activi ties listed in § 540.14(d);

(2) Attempting to solicit funds or items (e.g., samples), or subscribing to a publication without paying for the publication;

(3) Being a security risk;

(4) Threatening a government offi cial; or

(5) Having committed an offense in volving the mail.

(b) The Warden may limit to a rea sonable number persons on the ap proved restricted general correspond ence list. A code or similar device fol lowing procedures before placing an inmate on restricted general cor respondence.

(b) Staff shall advise the inmate in writing of the reasons the inmate is to be placed on restricted general cor respondence.

(c) Where the restriction will be based upon an incident report, proce dures must be followed in accordance with inmate disciplinary regulations (part 541, subpart B of this chapter).

(d) Where there is no incident report, the Warden shall use one of the following methods before placing an inmate on restricted general cor respondence.

### 28 CFR Ch. V (7-1-04 Edition)

---

## Bureau of Prisons, Justice

has the option to respond orally or to submit written information or both.

(h) Shall notify the inmate of the decision and the reasons, and shall ad vise the inmate that the inmate may appeal the decision under the Admin istrative Remedy Procedure in part 542.

(i) Where an inmate is placed on re stricted general correspondence, the in mate may, except as provided in §§ 540.16 and 540.17;

(j) Correspond with the inmate's spouse, mother, father, children, and siblings, unless the correspondent is in volved in an violation of correspond ence regulations, or would be a threat to a proposed correspondent to obtain a release authorizing an institution.

(2) Correspond with former business associates, unless it appears to the Warden that the proposed cor respondent would be a threat to the se curity or good order of the institution, or that the resulting correspondence could reasonably be expected to result in criminal activity. Correspondence with former business associates is lim ited to social transactions.

(e) The Warden may allow an inmate additional correspondence with persons other than those on the restricted, ap proved mailing list when the cor respondence is shown to be necessary and does not require an addition to the mailing list because it is not of an on going nature.

### § 540.16   Inmate correspondence while in segregation and holdover status.

(a) The Warden shall permit an in mate in holdover status (i.e., enroute to a designated institution) to have those of other inmates insofar as prac tical.

(b) The Warden shall permit an in mate in segregation to have full cor respondence privileges unless placed on restricted general correspondence under § 540.15.

### § 540.17   Correspondence between confined inmates.

An inmate may be permitted to cor respond with an inmate confined in any other penal or correctional institution if the other inmate is either a member of the immediate family, or is a party of witness in a legal action in which both inmates are involved. Such cor respondence may be approved in other exceptional circumstances, with par ticular regard to the security level of the institution, the nature of the rela tionship between the two inmates, and whether the inmate has other regular correspondence. The following addi tional limitations apply:

(a) Such correspondence at institu tions of all security levels may always be inspected and read by staff and may not be sealed by the inmate and read the mail.

(b)(1) The appropriate unit manager at each institution must approve of the correspondence if both inmates are housed in Federal institutions and both inmates are members of the same im mediate family or are a party or wit ness in a legal action in which both in mates are involved.

(2) The Wardens of both institutions must approve of the correspondence if either of the inmates is housed in non-Federal institution, or if approval is being granted on the basis of excep tional circumstances.

[50 FR 40109, Oct. 1, 1985, as amended at 61 FR 93206, Dec. 16, 1996]

### § 540.18   Special mail.

(a) The Warden shall open incoming special mail only in the presence of the inmate for inspection for physical con traband and the qualification of any enclosures as special mail. The cor respondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail— Open only in the presence of the in mate".

(b) In the absence of either adequate identification or the "special mail" marking indicated in paragraph (a) of this section appearing on the envelope, staff may treat the mail as general cor respondence and read the mail.

## § 540.18

graph (c)(2) of this section, outgoing special mail may be sealed by the inmate and is not subject to inspection.

(2) Special mail shall be screened in accordance with paragraphs (c)(1) and (c)(2)(i),(ii),(iii) of this section when the special mail is being sent by an inmate who has been placed on restricted special mail status.

(i) An inmate may be placed on restricted special mail status if the Warden, with the concurrence of the Regional Counsel, documents in writing that the special mail either has posed a threat or may pose a threat of physical harm to the recipient (e.g., the inmate has sent threatening correspondence to a recipient).

(ii) The Warden shall notify the inmate in writing of the reason the inmate is being placed on restricted special mail status.

(iii) An inmate on restricted special mail status must present all materials and packaging intended to be sent as special mail to Staff for inspection. Staff shall inspect the special mail in the presence of the inmate and, in the presence of the inmate, return the special mail material to the inmate if the material does not contain contraband, or contain a threat of physical harm to the intended recipient. If the special mail material has so requested, staff may read the special mail for the purpose of verifying that the special mail does not contain a threat of physical harm. Upon completion of the inspection, staff shall return the special mail material to the inmate if the material does not contain contraband, or contain a threat of physical harm to the intended recipient. Staff shall seal the special mail material in the presence of the inmate and immediately give the sealed special mail material to the observing staff for delivery. Special mail determined to pose a threat to the intended recipient shall be forwarded to the appropriate law enforcement entity. Staff shall send a copy of the material, minus the contraband, to the intended recipient along with notification that the original of the material was forwarded to the appropriate law enforcement entity.

(iv) The Warden shall review an inmate's restricted special mail status at least once every 180 days. The inmate is to be notified of the results of this review. An inmate may be removed

from restricted special mail status if the Warden determines, with the concurrence of the Regional Counsel, that the special mail does not threaten or pose a threat of physical harm to the recipient.

(d) Except for special mail processed through the Administrative Remedy Program.

(v) An inmate on restricted mail status may seek review of the restriction through the Administrative Remedy Program.

(d) Except for special mail processed through the Administrative Remedy Program, in accordance with paragraph (c)(2) of this section, staff shall stamp the following statement directly on the back side of the inmate's outgoing special mail: "The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address."

[52 FR 40108, Oct. 1, 1985, as amended at 62 FR 65385, Dec. 10, 1997]

§ 540.19 Legal correspondence.

(a) Staff shall mark each envelope of incoming legal mail (mail from courts or attorneys) to show the date and time of receipt, the date and time the letter is delivered to an inmate and opened in the presence of the inmate, and, if forwarded, the date and time the staff member who delivered the letter. The inmate may be asked to sign as receiving the incoming legal mail. This paragraph applies only if the sender has marked the envelope as specified in § 540.18.

(b) The inmate is responsible for advising any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "Special Mail—Open only in the presence of the inmate". Legal mail shall be opened in accordance with special mail procedures (see § 540.18).

(c) Grounds for the limitation or denial of an attorney's correspondence rights are stated in part 543, subpart B. If such action is taken,

the Warden shall give written notice to the attorney or the inmate affected.

(d) In order to send mail to, an attorney's assistant or legal aid student or assistant, in order to be identified and treated by staff as special mail, must be properly identified on the envelope as required in paragraph (b) of this section. The envelope must bear the name of the attorney or the legal organization or firm, to the attention of the student or assistant.

(e) Mail to an inmate from an attorney's assistant or legal aid student or assistant, in order to be identified and treated by staff as special mail, must be properly identified on the envelope as required in paragraph (b) of this section. The envelope must bear the name of the attorney or the legal organization or firm, to the attention of the student or assistant.

§ 540.20 Inmate correspondence with representatives of the news media.

(a) An inmate may write through "special mail" to representatives of the news media specified by name or title (see § 540.2(b)).

(b) Inmates may not receive compensation or anything of value for correspondence with the news media. This restriction does not apply to the return address on the envelope.

(c) Representatives of the news media may initiate correspondence with an inmate. Staff shall open incoming correspondence from representatives of the news media and inspect for contraband, cash, checks, and money orders, and for qualification as media correspondence, note either illegal activity or conduct contrary to Bureau regulations.

§ 540.21 Payment of postage.

(a) Except as provided in paragraphs (d), (e), (f), and (i) of this section, postage stamps are the responsibility of the inmate. The Warden shall ensure that the inmate commissary has postage stamps available for purchase by inmates.

(b) Writing paper and envelopes are provided at no cost to the inmate. Inmates who use their own envelopes must place a return address on the envelope (see § 540.12(d)).

(c) Inmate organizations will purchase their own postage.

(d) An inmate who has neither funds and who wishes

to mail legal mail (includes courts and attorneys) or an Administrative Remedy appeal, or postage for such mailing. To prevent abuses of this provision, the Warden may impose restrictions on the free postage for such mailing.

(d) When required by an inmate who has neither funds nor sufficient postage, the Warden shall provide the postage stamps necessary to mail a reasonable number of letters at government expense to enable the inmate to maintain community ties. To prevent abuses of this provision, the Warden may impose restrictions on the free mailings.

(e) Mailing at government expense is also allowed for necessary correspondence in verified emergency situations for inmates with neither funds nor sufficient postage.

§ 540.22 Special postal services.

(a) An inmate, at no cost to the government, may send correspondence registered, certified, or insured mail, and may request a return receipt.

(b) An inmate may insure outgoing personal correspondence (e.g., hobbycrafts) by completing the appropriate form and applying sufficient postage.

(c) In the event of loss or damage, any claim receive in this matter is made to the U.S. Postal Service, either by the inmate or the recipient. The U.S. Postal Service will only indemnify a piece of insured mail for the actual

(a) An inmate may write through "special mail" to representatives of the news media specified by name or title (see § 540.2(b)).

(b) Inmates must sign for all stamps issued to them by institution staff.

(d) Holdovers and pre-trial commitments will be provided a reasonable number of stamps for the mailing of letters at government expense.

(i) Inmates may not be permitted to receive stamps or stamped items (e.g., stamps embossed with stamps, postal cards with postage affixed) other than by issuance from the institution or by purchase from commissary.

[50 FR 40108, Oct. 1, 1985, as amended at 64 FR 32771, June 15, 1999]